Filed 10/21/21  Region 2 Court Interpreter etc. v. Cal. PERB CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| REGION 2 COURT INTERPRETER EMPLOYMENT RELATIONS COMMITTEE et al., | |
|     Petitioner, | A159985 |
| v. | |
| CALIFORNIA PUBLIC EMPLOYMENT RELATIONS BOARD, | (Public Employment Relations Board Decision No. 2701-I Case No. SF-CE-11-I) |
|     Respondent; | |
| CALIFORNIA FEDERATION OF INTERPRETERS, LOCAL 39000 et al., | |
|     Real Party in Interest. | |

The Trial Court Interpreter Employment and Labor Relations Act (Interpreter Act or Act) (Gov. Code, § 71800 et seq.)[1] organizes trial courts across the state into four regions and generally requires regional bargaining of court interpreter labor agreements.  In particular, the Act imposes an obligation upon the representative of the trial courts in each region and the recognized employee organization representing the interpreters to meet and

---

[1]     Unless otherwise indicated, all further statutory references are to this code.

1

confer on "matters within the scope of representation" (§ 71801, subd. (e)), which include "wages, hours, and other terms and conditions of employment" (§ 71816, subd. (a)). The central question in this case is whether regional bargaining of the impact of trial court changes to interpreter pension benefits is required in light of the Act's express contemplation that "health and welfare and pension benefits" for interpreter employees "may be the same as those provided to other employees of the same trial court." (§ 71808.)

In the proceedings below, the California Public Employment Relations Board (PERB) issued a decision concluding, among other things, that the Interpreter Act and the parties' memorandum of understanding required regional impact bargaining of pension benefit changes and that the Region 2 Court Interpreter Employment Relations Committee (Committee) acted unlawfully by refusing to meet and confer in good faith regarding the impact of changes to pension cost sharing by certain trial courts within Region 2. The Committee and the California Superior Courts of Region 2 (Region 2 Courts)[2] filed a petition for writ of extraordinary relief from the PERB decision, and we granted a writ of review.

Like PERB, we conclude the Committee had a statutory and contractual duty to engage in regional bargaining over the impacts of the trial court pension changes. We additionally conclude the other challenged portions of the PERB decision are correct. Accordingly, we deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

In California, each trial court maintains its own retirement plan for its court employees. (See § 71624.) Some of the Region 2 Courts participate in

---

[2] The Region 2 Courts include the superior courts in the "Counties of the First and Sixth Appellate Districts, except for Solano County." (§ 71807, subd. (a)(2).)

2

the California Public Employees' Retirement System (CalPERS), while others participate in a statutory retirement system through their respective counties. The trial court in San Francisco County participates in the City and County of San Francisco's retirement system.

Generally, the various trial court retirement plans operate under different pension and contribution formulae, and other requirements. Each plan involves an employer contribution and an employee member contribution to fund its pension benefits, and during the relevant time herein, some courts paid all or a portion of the employee member contribution, referred to as the "employer-paid member contribution" (EPMC). Thus, EPMC and employee contribution amounts varied from court to court because of retirement system differences. For example, in 2014, the EPMC was 0 percent for the Superior Courts of the City and County of San Francisco, Alameda County, and Santa Cruz County; 1.8 percent for Napa County Superior Court; 2 or 4 percent (based upon hire date) for Santa Clara County Superior Court; 7.8 percent for Mendocino County Superior Court; and 50 percent of the employee's member contribution for the Superior Courts of Contra Costa County and San Mateo County.

## A. The Interpreter Act

Prior to 2002, virtually all trial court interpreters were not court employees but instead were independent contractors who had no retirement or other benefits, no job security, and no right to representation. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 371 (2001–2002 Reg. Sess.) as amended Aug. 28, 2002, p. 2.) That situation changed in 2002, when the Legislature declared that court interpreter services "are vital to ensuring access and fairness in the trial courts" and passed the Interpreter Act "to provide for the fair treatment of court interpreters, to enhance access to the

3

court system for persons who depend upon the services of interpreters, and to promote sound court management." (Stats. 2002, ch. 1047, § 1, subd. (a) (Sen. Bill No. 371).) Pursuant to the Act, trial courts were required to transition from hiring independent contractors to appointing court employees for interpretation services. (*Id*., § 1, subd. (b).)

In addition to requiring court appointment of interpreters as employees, the Interpreter Act ensures the interpreter employees the right of representation in a unique process that calls for collective bargaining at a regional level. Specifically, the Act divides the California trial courts into four regions and requires the development and bargaining of regional employment terms and conditions for interpreter employees. (§ 71807.) Pursuant to the Act, the Committee serves as the "regional court interpreter employment relations committee" representing the Region 2 Courts (§§ 71807, subd. (a)(2), 71809), and the California Federation of Interpreters– The Newspaper Guild-Communication Workers of America, Local 39000 (CFI)[3] is the " '[r]ecognized employee organization' " representing the interpreter employees hired in the Region 2 Courts (§§ 71801, subd. (g), 71815).

Although the regional bargaining scheme will be addressed at length *post*, we note for now the Interpreter Act imposes an obligation to meet and confer on "matters within the scope of representation" (§ 71801, subd. (e)), which include "wages, hours, and other terms and conditions of employment." (§ 71816, subd. (a).) The Act expressly contemplates that compensation and generally all terms and conditions of employment for interpreter employees "shall be uniform throughout the region, except that health and welfare and

_____

[3] The organization's subdivisional number during the operative period was originally Local 39521, and subsequently changed to Local 39000.

4

pension benefits may be the same as those provided to other employees of the same trial court."  (§ 71808.)

## B.  The Memorandum of Understanding

Pursuant to the Interpreter Act, the Committee and CFI executed a memorandum of understanding that covered all interpreter employees in the Region 2 Courts during the period from December 16, 2013 through September 30, 2016 (MOU).  Consistent with the Act, the MOU expressed the agreement of the Committee and CFI that regular full-time and part-time interpreter employees would receive the same pension benefits as the employees in the largest, non-management-represented bargaining unit at their local court (the "linked bargaining unit").

By its terms, the MOU represented the "full and entire agreement of the parties" and declared their understanding that, "[e]xcept as specifically provided [in the MOU]," the parties "reserve the right, upon mutual agreement, to meet and confer in good faith with respect to any subject or matter covered herein or with respect to any other matter within the scope of representation, during the term of this MOU."

## C.  Trial Court Adjustments in EPMCs

After the parties executed the MOU, the California Public Employees' Pension Reform Act of 2013 (PEPRA) (Gov. Code, § 7522 et seq.) was enacted into law.  As pertinent here, PEPRA prohibited a public agency from paying an EPMC for "new members" hired on or after January 1, 2013 and set a standard that "employees pay at least 50 percent of normal costs" of their pension benefits.  (§ 7522.30, subd. (a).)  In 2014, Governor Brown apparently made statements indicating that reimbursement funding for benefits would be allocated less favorably to trial courts that did not eliminate the EPMC.

5

This prompted many courts to consider eliminating EPMCs from their retirement plans.

Among the courts considering EPMC changes was the Contra Costa County Superior Court. In 2015, that court notified CFI of its agreement with the linked bargaining unit to eliminate the court's EPMC in two phases. Before implementation of the first phase, the court and CFI met and conferred regarding the impacts of the first phase and reached agreement for additional paid leave time with a cash-out procedure and employer contributions to a deferred compensation plan. But CFI declined to meet and confer with the court on the impacts of the second phase. Instead, CFI announced its intent to request regional bargaining because it wanted a wage increase to offset the EPMC elimination. The court agreed to postpone a meet and confer to allow the Committee to respond to CFI's bargaining request.

**D. CFI's Regional Bargaining Request and Subsequent Events**

In February 2016, CFI representative and Regional Spokesperson Mary Lou Aranguren sent a letter to the Committee's Chairperson, Michael Yuen. As relevant here, Aranguren requested to meet and confer at the regional level regarding proposed PEPRA-related changes in retirement contributions following court negotiations with linked bargaining units. In making this request, Aranguren referenced the Superior Courts of Contra Costa County, Marin County, Napa County, San Mateo County, and Santa Clara County. On March 9, 2016, after consulting with the Court Executive Officers of the Region 2 Courts, Yuen responded to CFI with the position that, based on article 23.E of the MOU and the past practice of the Courts and CFI, retirement issues must be addressed at each local court and not regionally.

6

Thereafter, the Contra Costa County Superior Court and CFI returned to the bargaining table regarding the impacts of the court's phase two EPMC elimination. But no agreement was reached.

On April 1, 2016, CFI filed a grievance against the Committee and the Superior Courts of Contra Costa County, Marin County, San Mateo County, and Santa Clara County, alleging these courts planned to implement changes to pension cost sharing without a meet and confer at the regional level. Each trial court individually denied the grievance, with some claiming they had not yet commenced or completed the meet and confer process over pension cost sharing with the linked bargaining unit in their courts. The Superior Courts of Contra Costa County and Marin County additionally asserted they had met with CFI over pension cost sharing changes agreed to by the linked bargaining unit and had not made any changes. Each court expressed a willingness to meet and confer with CFI regarding the impacts of any pension cost sharing changes at the appropriate time.

On April 13, 2016, Yuen responded to CFI on behalf of the Committee. He stated that the Committee had not received the grievance and denied that any violation of the MOU had occurred. Yuen also stated his March 9, 2016 letter advised CFI that any bargaining shall occur at each local court.

On April 22, 2016, Aranguren sent letters to the Superior Courts of Contra Costa County, Marin County, and San Mateo County indicating CFI's grievances were preemptive.

Ultimately, the Superior Courts of San Mateo County, Mendocino County, and Santa Clara County each notified CFI of agreements with the linked bargaining units over changes to the EPMC in their respective courts and invited CFI to bargain the impacts. CFI indicated its desire to meet and confer at the regional level and declined to negotiate with the courts.

7

In May 2016, CFI filed an unfair practice charge against the Committee and the Region 2 Courts, alleging the Committee's refusal to bargain regionally over changes to pension contributions and certain trial courts' repudiation of the grievance procedure when they rejected the grievances over these changes. PERB's Office of the General Counsel issued a complaint. Thereafter, the PERB administrative law judge (ALJ) granted two motions by CFI to amend the complaint to add additional claims.

Meanwhile, in June 2016, Aranguren sent Yuen a letter requesting to meet and confer regarding a successor MOU. CFI and the Committee bargained over several months and reached an agreement on September 11, 2017. The agreement included a 21 percent wage increase over its three-year term to address, among other things, the impacts of changes to pension cost sharing at some of the trial courts.

## E. The ALJ Proposed Decision and PERB Decision

After presiding over an evidentiary hearing and considering the parties' post-hearing briefs, the ALJ determined that the Committee was not required to engage in regional bargaining over the impacts of trial court changes to employee pension contributions and that the Committee had lawfully delegated to the trial courts the duty to negotiate over such impacts. The ALJ further concluded the Committee had not refused to bargain over CFI's employee contribution proposals during successor contract negotiations in 2016–2017; the trial courts had not unilaterally changed employee pension contribution rates; and the courts had not repudiated the parties' contractual grievance procedures.

PERB affirmed in part and reversed in part the ALJ's proposed decision. Specifically, it affirmed the ALJ's conclusion that the Committee did not refuse to bargain over CFI's pension contribution proposals during

8

the successor contract negotiations. But PERB disagreed with the ALJ's other conclusions and held "(1) the Committee violated its duty to meet and confer in good faith by refusing to engage in impact bargaining in response to CFI's February 11, 2016 request; (2) the Mendocino, San Mateo, and Santa Clara County Superior Courts violated their duty to meet and confer in good faith by unlawfully implementing changes to the interpreters' pension contributions prior to completion of impact bargaining; (3) the Contra Costa, Marin, San Mateo, and Santa Clara County Superior Courts violated their duty to meet and confer in good faith by repudiating the parties' contractual grievance procedure; and (4) the Santa Cruz County Superior Court violated its duty to meet and confer in good faith when it unilaterally eliminated a stipend that offset interpreters' pension contributions."

Pursuant to section 71825.1, the Committee and the Region 2 Courts petitioned for writ of extraordinary relief from PERB's decision. We determined that a summary denial of the petition was not warranted and issued a writ of review.

## DISCUSSION

The principal issue is whether PERB properly concluded that the Committee violated a duty to meet and confer in good faith by refusing to engage in regional bargaining over the impacts of the trial court decisions to reduce or eliminate the EPMC in their courts.

The California Supreme Court recently summarized the standards governing our review of the underlying PERB decision, as follows. " '[C]ourts generally defer to PERB's construction of labor law provisions within its jurisdiction. (See [citations].) ". . . PERB is 'one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an

9

expertness which courts do not possess and therefore must respect.'
[Citation.]" [Citations.]' " (*Boling v. Public Employment Relations Bd.* (2018)
5 Cal.5th 898, 911–912 (*Boling*).) Thus, while courts retain final authority to
construe a statute, we adhere to PERB's interpretation unless we determine
it is clearly erroneous. (*Id.* at p. 912.) This type of "hybrid approach to
review in this narrow area maintains the court's ultimate interpretive
authority while acknowledging the agency's administrative expertise." (*Ibid.*)

Pursuant to statute, PERB's factual findings must be upheld if they are
supported by substantial evidence in the record considered as a whole.
(§ 71825.1, subd. (b).) We may not reweigh the evidence, and so long as
PERB's factual findings have a plausible basis, " ' "we are not concerned that
contrary findings may seem to us equally reasonable, or even more so.
[Citations.]" ' " (*Boling*, *supra*, 5 Cal.5th at p. 912.) Moreover, "when the
matter falls within PERB's area of expertise, the deferential standard
outlined above applies to its legal determinations even if based on undisputed
facts." (*Id.* at p. 913.) Finally, because PERB is " 'empowered to reweigh the
evidence [before an ALJ] and draw its own factual conclusions' " (*City of Palo
Alto v. Public Employment Relations Bd.* (2016) 5 Cal.App.5th 1271, 1288),
the rule requiring deference to PERB's findings applies even when it has
reversed an ALJ's proposed decision (see *ibid.*; e.g., *McPherson v. Public
Employment Relations Bd.* (1987) 189 Cal.App.3d 293, 304).

### A. The Interpreter Act

The Committee challenges PERB's conclusion that the Committee
violated its duty to meet and confer in good faith by refusing to engage in
regional bargaining over the impacts of the trial court decisions to reduce or
eliminate the EPMC for interpreter employees. Emphasizing that the
Interpreter Act does not require uniformity of pension benefits throughout

10

Region 2, the Committee contends the Act authorizes local trial court bargaining over the impacts of local EPMC changes.  Whether the Act requires regional bargaining over such impacts is a matter of statutory construction.

As a general matter, the fundamental task in statutory construction " ' " 'is to determine the Legislature's intent so as to effectuate the law's purpose.' " ' " (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 856–857.)  Statutory language should be examined " ' " 'in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment,' " ' " and the plain meaning of the language must be followed " ' " 'unless a literal interpretation would result in absurd consequences the Legislature did not intend.' " ' " (*Id*. at p. 856.)  When statutory language is susceptible to more than one reasonable interpretation, " ' " 'other aids, such as the statute's purpose, legislative history, and public policy' " ' " may be consulted.  (*Id*. at p. 857.)

Applying the deferential standard of review, we must determine whether it was clearly erroneous for PERB to construe the Interpreter Act as requiring regional bargaining over the impacts of EPMC changes. (*Boling*, *supra*, 5 Cal.5th at p. 912.)  We turn first to the statutory language.

To effectuate its regional bargaining scheme, the Interpreter Act provides that the "regional court interpreter employment relations committee" (here, the Committee) "shall set terms and conditions of employment for court interpreters within the region" (here, Region 2), which "shall be binding on the trial courts within the region" when adopted by the Committee.  (§ 71808.)  The Act specifies that the Committee "shall act as the representative of the trial courts within the region in bargaining with a

11

recognized employee organization" (here, CFI). (§ 71809). The Act expressly contemplates that the Committee or its designated representatives "shall meet and confer in good faith" with CFI regarding the "terms and conditions of employment *within the scope of representation*" as defined in the Act. (§71818, italics added.) The Act defines the "scope of representation" as including "*all matters relating to employment conditions* and employer-employee relations, including, but not limited to, wages, hours, *and other terms and conditions of employment*." (§ 71816, subd. (a), italics added.) In this regard, the Act states in unambiguous terms that "[c]ompensation shall be uniform throughout the region" but that "health and welfare and pension benefits may be the same as those provided to other employees of the same trial court." (§ 71808.) For purposes of the Act, " '[m]eet and confer in good faith' means that a trial court or [the Committee] or those representatives it may designate, and representatives of [CFI], shall have the mutual obligation personally to meet and confer promptly upon request by either party and continue for a reasonable period of time in order to exchange freely information, opinions, and proposals, and to endeavor to reach agreement on matters within the scope of representation." (§ 71801, subd. (e) (§ 71801(e)).)

A plain reading of these particular Interpreter Act provisions leads to the conclusion that pension benefits constitute a term or condition of employment falling within the scope of representation (§§ 71808, 71816) and that, as such, the impact of changes to pension benefits is subject to the statutory meet and confer requirement (§ 71801(e).) And because the Act expressly requires the Committee to act as the bargaining representative of the Region 2 Courts (§ 71809) and to meet and confer in good faith with CFI regarding "all matters relating to employment conditions" (§ 71816,

12

subd. (a)), the impact of changes to pension benefits must be bargained by the Committee at the regional level.

In disputing this construction, the Committee highlights the definition in section 71801(e) providing: " 'Meet and confer in good faith' means that *a trial court or regional court interpreter committee* or those representatives it may designate, and representatives of a recognized employee organization, shall have the mutual obligation personally to meet and confer promptly upon request by either party . . . ." (Italics added.) In the Committee's view, section 71801(e)'s use of the disjunctive phrase—"a trial court or regional court interpreter committee"—reflects the Act's express provision of a local bargaining option allowing individual trial courts to meet and confer regarding matters that are determined at the local level, such as pension benefits and health and welfare benefits.

While the Interpreter Act makes clear that interpreter pension benefits need not be uniform throughout a region (§ 71808), nowhere does the Act exclude the matter of pension benefits or the impact of pension benefit changes from the scope of representation. To the contrary, the Act broadly and explicitly contemplates the "scope of representation" as including "*all matters relating to employment conditions* . . . including, but not limited to, wages, hours, and *other terms and conditions of employment.*" (§ 71816, subd. (a), italics added.) Had the Legislature intended to provide for local trial court bargaining over the impact of pension-related changes, it would not have specified that "[t]he regional court interpreter employment relations committee . . . *shall* meet and confer in good faith regarding wages, hours, *and other terms and conditions of employment within the scope of representation, as defined in this chapter.*" (§ 71818, italics added.)

13

This construction aligns with other provisions of the Interpreter Act. For instance, the Act lists six specific matters—none of which concerns pension benefits—that reflect "the unique and special responsibilities of the trial courts" and explicitly excludes trial court decisions regarding such matters from "the scope of representation." (§ 71816, subd. (b).)[4] Nonetheless, the Act expressly stipulates that the *impact* from decisions on those six matters "as those matters affect wages, hours, and terms and conditions of employment of court interpreters" are "within the scope of representation," such that the Committee "shall be required to meet and confer in good faith with respect to that impact." (§ 71816, subd. (c).) In other words, even though trial court decisions on the six listed matters are statutorily exempt from the scope of representation, the Act specifically contemplates that regional bargaining by the Committee is appropriate for addressing their impact on wages, hours, and other employment terms and conditions.

Finally, it bears emphasizing that interpreting the Act to require regional bargaining over the impacts of pension contribution changes does not lead to absurd results. Indeed, as the PERB decision recounts, the Committee did in fact bargain in good faith with CFI over the impacts of

---

[4] Section 71816, subdivision (b), states in full: "In view of the unique and special responsibilities of the trial courts in the administration of justice, decisions regarding any of the following matters may not be included within the scope of representation: [¶] (1) The merits and administration of the trial court system. [¶] (2) Coordination, consolidation, and merger of trial courts and support staff. [¶] (3) Automation, including, but not limited to, fax filing, electronic recording, and implementation of information systems. [¶] (4) Design, construction, and location of court facilities. [¶] (5) Delivery of court services. [¶] (6) Hours of operation of the trial courts and trial court system."

14

EPMC changes during successor MOU negotiations, "repeatedly sweeten[ing] its wage proposals in an effort to address all EPMC impacts issues."

So what does section 71801(e) contemplate in stating that "a trial court or regional court interpreter committee" shall have the obligation to meet and confer in good faith with the recognized employee organization "on matters within the scope of representation"? As PERB observed, apart from section 71801(e), "[e]very other reference in the Act to the bargaining obligation refers to the regional committee alone." (See §§ 71807, 71808, 71809, 71816, subd. (c), 71818, 71819, 71820, 71821.) Thus, PERB concludes the Act "appears to contemplate that in some circumstances a trial court will be the appropriate entity to meet and confer with CFI," although the Act "does not specify what those circumstances would be."

Viewing the statutory scheme as a whole, we cannot say it was "clearly erroneous" for PERB to construe the Interpreter Act as effectively allowing a meet and confer at the local level if local bargaining is not expressly prohibited by the Act and if the trial court and the recognized employee organization have mutually agreed to it. But the structural design of the Act, which focuses on the primacy of the regional court interpreter committee as the representative of the trial courts in bargaining with the employee organization, leads us to conclude that the regional committee's consent to such local bargaining is also required. Moreover, the obligation to meet and confer in good faith under section 71801(e) necessarily includes the obligation of the parties to adhere to the terms of any mutual agreement to meet and confer at the local level, including any agreement to forgo regional impact bargaining.

In a further effort to undermine PERB's construction, the Committee highlights the portion of section 71801(e) that imposes the obligation to meet

15

and confer in good faith upon a "regional court interpreter committee *or those representatives it may designate.*" (Italics added.) Relying on this language, the Committee contends that a regional court interpreter committee such as itself is entitled to designate a trial court as its representative to bargain locally over the impacts of changes to pension benefits. In so contending, the Committee observes that section 71801(e) places no restriction on whom it may designate and that PERB precedent recognizes the right of management and unions to appoint their respective negotiators without interference from the other side. (See *Anaheim Union High School District* (2015) PERB Dec. No. 2434, p. 16.) We are not persuaded.

We agree section 71801(e) plainly permits the Committee to designate a representative for purposes of a meet and confer. But it is axiomatic that whomever the Committee designates must act to fulfill the Committee's regional obligation under the Act to meet and confer in good faith "on matters within the scope of representation" (§ 71801(e)), including the setting of the "terms and conditions of employment" that will bind all Region 2 Courts (§§ 71808, 71816, subd. (a), 71818). (See *State of California (Department of Personnel Administration)* (1998) PERB Dec. No. 1305-S, p. 8 [a "specific delegation of bargaining may be unlawful if it is found to be inconsistent with the obligation to bargain in good faith"].) Moreover, while PERB precedent supports the Committee's right to designate its bargaining representative without CFI's interference, that representative remains obligated to negotiate on the same regional basis as the Committee where the parties have not otherwise agreed. Reasonably understood, section 71801(e) does not grant the Committee an absolute right to designate a trial court to bargain locally over the impacts of changes to the terms and conditions of

16

employment, including changes to the EPMC and employee pension contributions.

Additionally, PERB observed that because the Act requires uniformity of compensation throughout the region (§71808), "trial courts necessarily lack the statutory authority to change interpreters' wages." (Fn. omitted.) In PERB's view, "allowing the Committee to delegate impact bargaining to a trial court under these circumstances would extinguish CFI's ability to negotiate for higher wages to offset increased employee pension contributions. Nothing in the Act indicates the Legislature intended this result." (Fn. omitted.)

In this regard, the Committee has never denied that designating trial courts to bargain over the impacts of EPMC and employee contribution changes forecloses CFI's ability to negotiate a wage offset. Indeed, the trial courts "consistently declined to negotiate wage increases on the basis that compensation is subject to regional control under the Act's uniformity requirement." The Committee instead emphasizes that trial courts may and were prepared to offer "other economic fringe benefits" to address such impacts.

Notably, however, a party may not refuse to discuss a mandatory subject of bargaining—here, a subject within the scope of representation—once the other party has requested bargaining on that subject. (*City of San Jose* (2013) PERB Dec. No. 2341-M, p. 27, citing Gov. Code, § 3505 [Meyers-Milias-Brown Act].) As PERB indicated, construing the Interpreter Act in a manner that allows the Committee to unilaterally define its meet and confer obligation over matters within the scope of representation and to impair CFI's ability to negotiate wage increases to offset increased employee pension contributions "is incongruous with the Legislature's purpose in enacting a

17

statutory scheme granting court interpreters the right to engage in collective bargaining over 'wages, hours, and other terms and conditions of employment.'" We will avoid this construction, as it tends to defeat, rather than promote, the legislative purpose. (*Boling, supra*, 5 Cal.5th at p. 918; see *Santa Clara Valley Water District* (2013) PERB Dec. No. 2349-M, p. 17.)[5]

Having determined that PERB correctly concluded the Committee was obligated under the Interpreter Act to meet and confer with CFI over the impacts of the EPMC changes, we next address PERB's finding the Committee violated its statutory obligation.

"A complaint alleging any violation" of the Interpreter Act "shall be processed as an unfair practice charge" by the Board. (§ 71825, subd. (c).) Moreover, an outright refusal to bargain regarding a mandatory subject is a per se violation of the duty to bargain in good faith. (*Fresno County In-Home Supportive Services Public Authority* (2015) PERB Dec. No. 2418-M, p. 15.) Here, PERB observed "it is undisputed that, on March 9, 2016 and June 30, 2017, the Committee refused to meet and confer with CFI over the impacts of trial courts' changes to employee pension contributions." The record bears out that observation, and the Committee does not dispute it. Accordingly, we agree with PERB that a statutory violation and unfair practice have been established. (§ 71825, subd. (c); 8 Cal. Code Regs., tit. 8, § 32608.)

**B. The MOU**

Though lacking the authority to enforce contracts between parties (§ 3541.5, subd. (b)), PERB may interpret an MOU if necessary to resolve an

---

[5]     Having concluded the Interpreter Act did not grant the Committee an absolute right to designate an individual trial court to bargain locally over the impacts of EPMC changes, we need not and do not decide whether PERB erroneously found the Committee did not in fact designate the trial courts to bargain regarding such impacts.

18

unfair practice allegation. (*San Francisco County Superior Court & Region 2 Court Interpreter Employment Relations Committee* (2018) PERB Dec. No. 2609-I, p. 7.) Here, PERB found the Committee was contractually obligated under the MOU to bargain regionally over impacts of EPMC changes.

"MOU's are binding contracts and are interpreted in accordance with the general rules of contract interpretation." (*County of Fresno v. Fresno Deputy Sheriff's Assn.* (2020) 51 Cal.App.5th 282, 292 (*County of Fresno*).) "Where contractual language is clear and unambiguous, it is unnecessary to go beyond the plain language of the contract itself to ascertain its meaning. [Citations.] 'The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' (Civ. Code, § 1641.) Thus, 'the Board must avoid an interpretation of contract language which leaves a provision without effect.' [Citation] However, where the contract language is silent or ambiguous, the policy may be ascertained by examining past practice or bargaining history. [Citations.]' " (*County of Sonoma* (2012) PERB Dec. No. 2242-M, pp. 15–16.) We conclude PERB properly adhered to these principles in interpreting the MOU.

Articles 22 and 23 of the MOU[6] described the wages and benefits afforded to court interpreters. Consistent with section 71808 of the Interpreter Act, article 22 set forth the agreed wages and compensation for interpreter employees on a region-wide basis. In turn, article 23 addressed the various benefits. While article 23 provided that holiday benefits for interpreters applied uniformly across all trial courts in Region 2, it specified that other benefits were available to interpreters at the same level as for

---

6       All references to articles are to articles of the MOU.

19

other represented court employees, i.e., benefits regarding vacation; sick leave; leaves of absence; health, vision, dental, and other insurance; and retirement. Article 23.E, in particular, provided that each interpreter employee "shall be eligible to participate in the same retirement plan at the same benefit level as those non-management hourly represented employees of the local trial court. The level of benefit shall include but not necessarily be limited to, eligibility, vesting, employee contribution, regular retirement date, benefit formula, etc."

Article 23.E also explicitly stated that the impact of any changes in retirement benefits "will be subject to meet and confer." Notably, however, the article was silent as to whether impact negotiations must occur with the Committee at the regional level. But the obligation to meet and confer was set forth in article 4, section 1, which provided: "For the purpose of meet and confer under this agreement," the "duly authorized representatives" shall be "the Chairperson of the [Committee] or his/her designee" and "the Executive Officer or Court Interpreter Unit Chair of [CFI] and his/her designee." As PERB correctly reasoned, articles 4 and 23.E, considered together, make reasonably clear that the Committee was contractually obligated to meet and confer over the impact of changes to retirement benefits. We further note that, had the MOU intended to reflect an agreement for trial courts to meet and confer over such impacts, it could have said so just as it did for impacts of changes in other benefits.[7]

---

[7] Article 25, for example, provided: "Court-provided employee parking and reimbursement of parking and transit related expenses shall be maintained in accordance with each trial court's practices. In the event that the local practice changes, *the Court shall meet and confer regarding the impact of the changes in practices*." (Italics added.)

20

The Committee's contentions to the contrary are not persuasive. First, the Committee argues that article 4, section 1, permits its Chairperson to designate a trial court to act as its authorized representative for "the purpose of meet and confer" under the MOU. We disagree. As in the statutory context, the language of this article necessarily contemplates that the Chairperson's designee could and would exercise the full scope of the Committee's meet and confer authority under the MOU. But individual trial courts have no authority to negotiate wage increases to offset increased employee pension contributions. Accordingly, PERB properly found the Committee violated the MOU by refusing to meet and confer with CFI over EPMC change impacts.

The Committee alternatively contends the MOU should have been interpreted with reference to substantial evidence in the record that CFI and certain trial courts previously bargained at the local level over the impact of pension changes. (See *County of Sonoma, supra*, PERB Dec. No. 2242-M at p. 16 ["where the contract language is silent or ambiguous, the policy may be ascertained by examining past practice or bargaining history"].) In this regard, the Committee cites instances in 2008, 2014, and 2015 in which CFI met and conferred with Santa Cruz County Superior Court, Napa County Superior Court, and Contra Costa County Superior Court, respectively, over the impacts of EPMC reduction or elimination. This contention lacks merit.

To the extent the Committee's claim is premised on the 2014 and 2015 events in Napa County and Contra Costa County, which occurred while the MOU was in effect, the claim is undermined by the MOU itself. As a contractual matter, article 13, section 1 was express in providing: "The waiver of any breach, term or condition of this MOU by either party shall not constitute a precedent in the future enforcement of all its terms and

21

provisions." Thus, any instance of the parties agreeing to local bargaining in these instances did not result in a waiver of CFI's contractual right to meet and confer with the Committee over future enforcement of the Committee's obligations to bargain regionally over the impact of EPMC changes.

Nor is a different result compelled by any of the evidence connected to the 2008 impact bargaining and arbitration decision involving the Santa Cruz interpreters. That 2008 bargaining occurred under a previous MOU, and CFI apparently assented to local impact bargaining with the Santa Cruz County Superior Court. Although that particular MOU is not in the record, the parties' negotiations appear to have been permitted under section 71801(e) of the Interpreter Act (see *ante*, at p. 15), since both CFI and the court evidently agreed to bargain locally without objection from the Committee. And contrary to the Committee's suggestion, Arbitrator William E. Riker did not render an "interpretation" of article 23.E that is binding on PERB or the parties here. There is absolutely no indication in Riker's decision that he was purporting to decide whether regional impact bargaining over pension changes was either statutorily or contractually required.

**C. Unilateral Changes in Violation of the Duty to Bargain**

Under PERB standards, to prevail on a complaint of illegal unilateral change, the charging party must establish: " '(1) the employer breached or altered the parties' written agreement, *or own established past practice*; (2) such action was taken without giving the exclusive representative notice or an opportunity to bargain over the change; (3) the change is not merely an isolated breach of the contract, but amounts to a change of policy, i.e., the change has a generalized effect or continuing impact on . . . terms and conditions of employment; and (4) the change in policy concerns a matter within the scope of representation.' " (*County of Fresno, supra,* 51

22

Cal.App.5th at p. 295; e.g., *County of Kern* (2018) PERB Dec. No. 2615-M, pp. 8–9.)

Here, PERB found that certain trial courts committed unfair practices under section 71825 by: (1) implementing EPMC changes prior to the completion of impact bargaining (Mendocino, San Mateo, and Santa Clara); (2) unilaterally changing the parties' negotiated grievance procedure (Contra Costa, Marin, San Mateo, and Santa Clara); and (3) unilaterally eliminating a pension stipend (Santa Cruz). We address the Committee's challenges to these findings in order.

> 1. *Implementation of EPMC Changes Prior to Completion of Impact Bargaining: Mendocino, San Mateo, and Santa Clara County Superior Courts*

Generally, an employer must refrain from implementing a change impacting wages, hours, or terms or conditions of employment until impact bargaining has been completed to agreement or impasse. (*County of Santa Clara* (2013) PERB Dec. No. 2321-M, pp. 24-26, 30; see *City of El Cajon v. El Cajon Police Officers' Assn.* (1996) 49 Cal.App.4th 64, 71–72.) But an employer that has negotiated in good faith may implement a change prior to the completion of bargaining if the implementation date was based upon an "immutable deadline" or "an important managerial interest, such that a delay in implementation beyond the date chosen would effectively undermine the employer's right to make the nonnegotiable decision." (*Compton Community College District* (1989) PERB Dec. No. 720, pp. 14–15.)

Here, PERB found the Mendocino, San Mateo, and Santa Clara County Superior Courts unlawfully implemented changes to their respective EPMCs prior to the completion of regional impact bargaining. In contending this was error, the Committee highlights evidence in the record that: (1) the three courts each notified CFI of the EPMC changes to which the linked bargaining

23

units in each court had agreed; (2) the courts made repeated offers to meet and confer before implementing the respective EPMC changes; and (3) CFI refused to meet and confer or offer any impact mitigation proposal. We are not persuaded.

While the record amply demonstrates the courts' efforts to bargain the impacts of EPMC changes at a local level, we have already determined the Committee was statutorily and contractually obligated to bargain such impacts at the regional level. Thus, the courts should have waited for CFI and the Committee to complete regional bargaining over impacts before implementing the EPMC changes.

Indeed, CFI and the Committee did in fact engage in impact bargaining over the EPMC changes as part of successor MOU negotiations and completed the bargaining process in September 2017. But by that time, the Mendocino, San Mateo, and Santa Clara County Superior Courts had already implemented their EPMC changes for the court interpreters. As for whether implementation of the changes could not be delayed, PERB concluded to the contrary: "No evidence in the record shows that the Courts could not have waited until the completion of regional impact bargaining to implement the EPMC changes, or that their decision to make those changes would have been undermined by the delay."

The Committee's reliance on *Stockton Police Officers' Assn. v. City of Stockton* (1988) 206 Cal.App.3d 62 and *Metropolitan Water District of Southern California* (2009) PERB Dec. No. 2055-M is misplaced. In those cases, the employee organizations failed to timely request to meet and confer after they were notified of the employers' intent to make changes and thus waived their bargaining rights. Here, however, there is no question that CFI timely demanded to meet and confer regionally with the Committee.

24

In sum, the record supports PERB's finding that these courts committed an unfair practice under the Interpreter Act by unilaterally implementing their EPMC changes prior to the completion of regional impact bargaining.

### 2. *Unilateral Change of Grievance Procedure: Contra Costa, Marin, San Mateo, and Santa Clara County Superior Courts*

An employer may not unilaterally repudiate or add terms to an existing collective bargaining agreement. (See *Stanislaus Consolidated Fire Protection District* (2012) PERB Dec. No. 2231-M, pp. 13–17.) Grievance procedures generally fall within the scope of representation (*County of Riverside* (2003) PERB Dec. No. 1577-M, p. 6), and an employer's failure or refusal to process a grievance in accordance with collectively bargained grievance procedures may constitute an unlawful unilateral change (E.g., *Inland Empire Utilities Agency* (2019) PERB Dec. No. 2658-M, pp. 1–2; *Omnitrans* (2010) PERB Dec. No. 2143-M, pp. 6–8).

Pursuant to article 9 of the MOU,[8] on April 1, 2016, CFI filed a grievance with the Contra Costa, Marin, San Mateo, and Santa Clara County Superior Courts alleging the courts had notified CFI they had or were in the process of changing EPMCs for the interpreters. Citing articles 13 and 23.E, as well as the Committee's March 9, 2016, written refusal to bargain over those changes on a regional basis, CFI claimed it was contractually entitled to regional negotiations and offsetting benefits equivalent to those the courts had provided to linked bargaining units. Although CFI also named the

---

[8] Article 9 contained a three-step procedure for resolving grievances arising under the MOU that started with a process for possible informal resolution and ultimately provided for binding arbitration. As defined in the article, a " 'grievance' " referred to "a dispute of one or more employees, or [CFI] involving the interpretation, application or the enforcement of the express terms of this MOU."

Committee in its grievance allegations, it did not file the grievance with the Committee based on the belief that article 9 did not allow CFI to file grievances on a regional basis. (PERB Dec. at pp. 18-19, fn. 14.)

Each of the four courts individually denied the grievance as premature, with some claiming they had neither commenced nor completed the meet and confer process over pension cost sharing with the linked bargaining unit in their courts. The Contra Costa and Marin County Superior Courts additionally asserted they had been meeting with CFI over pension cost sharing changes agreed to by the linked bargaining unit and had not made any changes. All four courts expressed a willingness to meet and confer with CFI regarding the impacts of any pension cost sharing changes at the appropriate time. But none of the courts held any meetings with CFI over its grievance. (PERB Dec. at p. 21.)

As PERB observed, the Committee clearly stated in writing to CFI that its refusal to bargain regionally over the impacts of EPMC changes was not grievable " 'because Article 23.E clearly establishes the agreement between the [parties] that such bargaining shall occur at each [trial] court.' " (PERB Dec. at p. 54.) In alignment with the Committee's position, the four courts rejected CFI's grievance on the ground the matter was simply not subject to the article 9 grievance procedures. As PERB reasonably concluded, the courts' rejection essentially indicated that future grievances over such changes would be rejected outright. Where, as here, the failure to process CFI's grievances has "a generalized effect or continuing impact" on the terms and conditions of employment for CFI members across the various courts, an unlawful unilateral change of policy may be found. (See *Omnitrans, supra,* PERB Dec. No. 2143-M at pp. 7–8.)

In this court, the Committee complains PERB failed to consider the Committee's evidence and argument that the trial courts' rejection of the grievance was based on the circumstance that pension cost sharing changes had not yet been implemented as to the interpreters or even as to the linked bargaining units in some instances. Such circumstance, the Committee claims, rendered CFI's grievance anticipatory and not yet ripe for processing through the grievance procedure. Citing *Hacienda La Puente Unified School District* (1997) PERB Dec. No. 1187 (*Hacienda*), the Committee argues the courts' denial of a premature grievance did not amount to an impermissible change or repudiation of grievance procedure.

The Committee's reliance on *Hacienda* is misplaced. *Hacienda* determined that a school district did not unilaterally change a grievance process where the facts established its conformance to a past practice to which it had consistently adhered over an extended period of time. (*Hacienda, supra,* PERB Dec. No. 1187, at p. 2, pp. 13–16 of the adopted ALJ's decision in *Hacienda.*) Here, the record is devoid of evidence indicating the courts' past practice of rejecting a grievance without adhering to article 9's grievance procedures. More to the point, the courts were firm in their refusal to meet and process CFI's charge that it was contractually entitled to regional negotiations over the impacts of EPMC changes, and the record contains no indication the courts would consider meeting with CFI and processing such grievance at any point in time. Because PERB's factual findings are supported by substantial evidence based on the whole of the record, we shall not disturb its determination that the courts unilaterally implemented a change in policy by repudiating article 9's grievance procedures without first affording CFI notice and then the opportunity to be heard over that change. (See *Boling, supra,* 5 Cal.5th at p. 912.)

27

### 3. *Change of Past Practice Regarding Pension Stipend:  Santa Cruz County Superior Court*

Under PERB precedent, an established policy can take the form of an established past practice.  (*County of Riverside* (2013) PERB Dec. No. 2307-M, p. 20.)  An established past practice has been described as a practice that is "unequivocal, clearly enunciated and acted upon, and readily ascertainable over a reasonable period of time as a fixed and established practice accepted by both parties," or a practice that is " 'regular and consistent,' " or " 'historic and accepted.' "  (*Id*. at p. 20.)  When an employee bargaining unit first learns of a negotiable change to an established practice in circumstances where the employer indicates "it has no intention of entering into negotiations with an open mind," then "by definition, there has been inadequate notice."  (*City of Sacramento* (2013) PERB Dec. No. 2351-M, p. 33.)

In 2007, CFI filed a grievance against Santa Cruz County Superior Court, alleging court interpreters were entitled to the same one-time wage increase that employees in the linked bargaining unit received to offset the court's pension contribution changes.  The grievance was submitted to Arbitrator William E. Riker for final and binding arbitration.  In June 2009, Arbitrator Riker awarded "a retroactive monetary 'pension offset leave benefit' " to continue at least until expiration of the then-operative MOU between the trial court and the linked bargaining unit, Service Employees International Union, Local 521.  Although that MOU expired in October 2010, "the court continued to pay the stipend to court interpreters through 2017."  In June 2017, the court decided to end the stipend and informed CFI it would stop such payments.

Here, the evidence that the Santa Cruz Superior Court consistently paid the stipend to its interpreters over the course of eight years after the operative MOU expired in 2010 substantially supports PERB's finding that

28

the stipend payments constituted "a binding past practice." Thus, we defer to that finding. (§ 71825.1, subd. (b); *Boling*, *supra*, 5 Cal.4th at p. 912.) The record and relevant PERB authority also support PERB's findings that "[t]he amount employees pay toward their pension benefits is within the scope of representation because it has a direct effect on wages" (see *Clovis Unified School District* (2002) PERB Dec. No. 1504, pp. 17–18); the court's June 2017 elimination of the stipend was therefore a change that involved a matter within the scope of representation; and the decision to stop paying the stipend had a generalized effect and continuing impact on the affected employees. Because the court made no offer to meet and confer before notifying CFI that it would end the stipend payments, we agree with PERB that the court acted unilaterally and unlawfully in making that change. (*City of Sacramento*, *supra*, PERB Dec. No. 2351-M, p. 33.)

In challenging PERB's findings, the Committee first argues that PERB lacked jurisdiction to decide that the Santa Cruz Superior Court unlawfully changed its past practice of paying a stipend because the ALJ did not make a finding on this issue and CFI failed to take exception to the ALJ's failure to do so. While the Committee correctly notes that an exception not specifically identified generally is waived (Cal. Code Regs., tit. 8, §§ 32300, subd. (c), 32635, subd. (b); *County of Ventura (Office of Agricultural Commissioner)* (2011) PERB Dec. No. 2227-M, p. 2), PERB is statutorily authorized to review unappealed matters and may consider sua sponte legal issues not raised by the parties. (§ 71825, subd. (b); § 3541.3, subd. (i); Cal. Code Regs, tit. 8, § 32320, subd. (a)(2) [PERB may "take such other action as it considers proper" in reaching a decision]; *State Employees Trades Council United* (2009) PERB Dec. No. 2069-H, pp. 6–7; *Antelope Valley Community College District* (1981) PERB Dec. No. 168, p. 5, fn. 5.) Here, the Committee makes

29

no claim that PERB could not properly make a de novo finding on the stipend matter based on the administrative record or that its finding was improper due to a deficient or undeveloped record. Thus, we reject the Committee's jurisdictional challenge.

Turning to the merits, the Committee next contends the court's ceasing of the stipend payment was not a unilateral change because the court acted in compliance with Arbitrator Riker's 2009 order and explicit acknowledgement that he could not order payment of the stipend beyond 2010, when the MOU at issue expired. While a unilateral change might not have been at issue had the court ended the stipend upon expiration of the MOU, the very fact that the court regularly and consistently paid the stipend to the interpreter employees for another eight years after the MOU's expiration is what elevated the conduct to an enforceable, established past practice that the court then unilaterally and unlawfully terminated (*County of Riverside*, *supra*, PERB Dec. No. 2307-M at p. 20).

### DISPOSITION

The petition for writ of extraordinary relief is denied. CFI is awarded its costs on appeal.

_____
Fujisaki, Acting P. J.

WE CONCUR:


_____
Petrou, J.


_____
Chou, J.*




*A159985/Region 2 Court Interpreter Employment Relations Committee v. PERB*




---

* Judge of the Superior Court of San Mateo County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.